# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TOLL PROCESSING SERVICES, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 12-cv-10058 |
| KASTALON, INC., KASTALON ) | |
| POLYURETHANE PRODUCTS, and ) | |
| KASTALON, INC. t/d/b/a KASTALON ) | |
| POLYURETHANE PRODUCTS, ) | |
| ) | |
| Defendants. ) | Judge Sharon Johnson Coleman |
| ) | |
| KASTALON, INC., ) | |
| ) | |
| Counter-Plaintiff, ) | |
| v. ) | |
| ) | |
| TOLL PROCESSING SERVICES, LLC, ) | |
| ) | |
| Counter-Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Toll Processing Services, LLC, ("Toll Processing") filed a three-count First Amended Complaint, alleging conversion, negligence, and breach of contract against defendants, Kastalon, Inc., et al, (collectively "Kastalon") in connection with Kastalon's handling and storage of polyurethane-coated steel rolls. Kastalon moves to dismiss Count III for failure to state a claim of breach of an oral contract [51]. Toll Processing moves to partially dismiss Kastalon's counterclaim [59]. For the reasons stated herein, Kastalon's motion to dismiss Count III is denied and Toll Processing's partial motion to dismiss is granted.

**Background**

The following facts from the First Amended Complaint are taken as true for purposes of this ruling. Plaintiff, Toll Processing, is a Delaware limited liability company with its principal place of business in Pittsburgh, Pennsylvania. Defendant, Kastalon Inc. and Kastalon Polyurethane Products, is an Illinois corporation. Toll Processing is engaged in, among other things, the business of acquiring, constructing and/or operating a pickle line facility.

In 2006, Toll Processing purchased a used pickle line from Joseph T. Ryerson & Sons, Inc. in Chicago, Illinois. As part of this purchase, Toll Processing also acquired a number of polyurethane-coated steel rolls (the "rolls"), which form part of a pickle line. In early 2008, Toll Processing arranged with Kastalon to have the rolls moved from Ryerson's facility to Kastalon's facility, to be stored indoors by Kastalon until Toll Processing could issue a purchase order to Kastalon for reconditioning of the rolls. Kastalon agreed to store the rolls at their facility for no change until such purchase order for reconditioning issued.

In February and March 2008, the rolls were shipped to Kastalon's facility for storage in four separate shipments. Each shipment had a separate bill of lading with an equipment list showing the items that were shipped to Kastalon and the dates of shipment, receiving tickets, and an email chain between Kastalon and Toll Processing confirming that Kastalon had the rolls in storage. On October 21, 2008, Gus Schempp, a senior official for Toll Processing, telephoned Michael DeMent, Vice President and co-owner of Kastalon, to confirm that Kastalon would not charge a storage fee for the rolls and that a date for the reconditioning of the rolls and the issuance of a purchase order were still to be determined. DeMent confirmed that information for Schempp.

Kastalon stored the rolls in an indoor facility for approximately two years, while Toll Processing's project to re-install the rolls at another location was in development. Kastalon later decided, without consulting Toll Processing, to grease and wrap the rolls and move them outdoors for storage. Toll Processing alleges, on information and belief, that Kastalon stored the rolls outside until approximately December 2010. Kastalon allowed the rolls to rust.

Apart from the October 21, 2008, telephone call from Gus Schempp to Michael DeMent, neither DeMent nor any other officer or employee of Kastalon ever attempted to contact or to follow up with Schempp or with anyone else from Toll Processing to inquire about the status of rolls. Kastalon sold the rolls to Smith Salvage Company for their scrap metal value in December 2010 without the knowledge or consent of Toll Processing. On June 13, 2011, Schempp contacted Kastalon to request a quote for the reconditioning of the rolls because Toll Processing had located a buyer for the pickle line. Kastalon informed Schempp that it had sold the rolls for scrap and they were no longer in Kastalon's possession.

Count III of the First Amended Complaint alleges breach of an oral contract.

**Legal Standard**

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, a complaint must contain sufficient factual allegations to state a claim of relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) sets forth the basic pleading requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require a plaintiff to plead particularized facts, the factual allegations in the complaint must sufficiently raise a plausible right to relief above a speculative level. *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Rule 8 does not impose a probability requirement but rather

calls for "enough fact to raise a reasonable expectation that discovery will reveal evidence" that would support the plaintiff's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). When ruling on a motion to dismiss a court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**Discussion**

*I. Kastalon's Motion to Dismiss Count III*

Kastalon moves to dismiss Count III of Toll Processing's First Amended Complaint for failure to state a claim for breach of an oral contract because the factual allegations in the complaint are insufficient to establish the material terms of the contract. Alternatively, Kastalon argues that Count III is barred by the statute of limitations. This Court finds that Count III is adequately pleaded.

To state a claim for breach of an oral contract in Illinois, a plaintiff must establish: (1) an offer and acceptance; (2) consideration; (3) the terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damages resulting from the breach. *Penzell v. Taylor*, 219 Ill. App. 3d 680, 579 N.E.2d 956, 961, 162 Ill. Dec. 142 (Ill. App. Ct. 1991).

Here, Kastalon argues that the alleged contract terms are not sufficiently definite because the complaint fails to state precisely when and where the agreement was reached, and by whom. Kastalon also argues that absence of the terms of the reconditioning purchase order, including price is fatal to the claim. "However, although a plaintiff may not prevail on a claim for breach of an oral contract unless the terms of the contract are proved with specificity, the exact terms of

the alleged oral agreements need not be included in the complaint." *Miller v. Harris*, 2013 IL App (2d) 120512, P28 (Ill. App. Ct. 2d Dist. 2013).

The instant case is substantially different than *Abrams v. Illinois College of Podiatric Medicine*, in which the allegations of an oral contract stated only that the defendant told the plaintiff not to worry about the difficulties he was having, and "that everything would be done to assist [him], including figuring out some way to help him." 77 Ill. App. 3d 471, 476, 395 N.E.2d 1061 (1979). Here, Toll Processing alleges that it contacted Kastalon to store the rolls inside its facility free of charge in exchange for engaging Kastalon to recondition the rolls at a later date. Further, Toll Processing alleges that Gus Schempp, a Senior officer at Toll Processing contacted Michael DeMent on October 21, 2008, to confirm the agreement. The fact that the rolls were shipped to Kastalon and that Kastalon stored the rolls inside for approximately two years also suggests an agreement. The fact that Schempp later contacted Kastalon to request a quote for reconditioning the rolls also supports the creation of an agreement and fulfillment of that agreement by Toll Processing. The complaint alleges that Kastalon breached the agreement approximately two years after entering it in February and March 2008 by moving the rolls outside where they were allowed to rust. These facts adequately state a claim for breach of an oral agreement.

Kastalon also argues that Count III is untimely. The parties do not dispute that oral contracts have a five-year statute of limitations. Accrual of a breach of oral contract claim occurs "at the time of the breach, not when a party sustains damages." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (Ill. 1995). Here, Toll Processing filed the complaint on August 13, 2013, and therefore the breach must have occurred after August 13, 2008, to be timely. The complaint alleges that Kastalon agreed in early 2008 to store the rolls inside its

facility. The rolls arrived at Kastalon in February and March 2008, were stored inside for approximately two years when they were moved outside. Based on these allegations, the Court may infer that breach occurred in 2010, when Kastalon moved the rolls outside approximately two years after it received them. Thus, this Court finds that Toll Processing has alleged a timely claim. Kastalon's motion to dismiss is denied.

*II. Toll Processing's Partial Motion to Dismiss Kastalon's Counterclaim*

Toll Processing moves for partial dismissal of Kastalon's counterclaims pursuant to Rule 12(b)(6). Toll Processing asserts that the statute of limitations bars Kastalon's counterclaims for *quantum meruit* and unjust enrichment for damages arising from Kastalon's transporting of the rolls to its facility. In Illinois, "[a]ctions seeking recovery on the basis of unjust enrichment or *quantum meruit* are subject to the five-year statute of limitations set forth in [735 ILCS 5/13-205]." *Mann v. Thomas Place, L.P.*, 976 N.E.2d 554, 557, 2012 IL App (1st) 110625 (Ill. App. Ct. 2012). "A cause of action on an oral contract or on a *quantum meruit* theory accrues when the services are completed." *P-K Tool & Mfg. Co. v. General Elec. Co.,* 612 F.Supp. 276, 278 (N.D. Ill. 1985).

Toll Processing contends that Kastalon cannot recover damages for transporting the rolls to its facility because the transportation services were complete in March 2008. Kastalon argues in response that its transportation services cannot be separated from its storage services. Kastalon asserts that its transportation services were part of a continuous piece of work for both the transportation and storage of the rolls and therefore the cause of action does not accrue until *all* the work is complete. *See Strom v. Lipschultz,* 5 Ill. App. 3d 308, 312, 282 N.E.2d 257 (2d Dist. 1972). This rule however applies to construction cases. In discussing the ruling in *Strom v. Lipschultz*, relied on by Kastalon, the Illinois Appellate Court stated: "We consider the rule to be

that when a construction contract is involved, the period of limitation will begin to run against the contractor's claim for payment prior to the completion of the contract only in very rare circumstances." *Santucci Constr. Co. v. Danville*, 128 Ill. App. 3d 954, 957 (Ill. App. Ct. 4th Dist. 1984). The instant case is clearly not a construction contract and Kastalon fails to show that the rule of continuous work applies in other situations.

Alternatively, Kastalon argues that the limitations period should be "delayed" by the discovery rule because it was not aware of its damages until Toll Processing abandoned the rolls. Kastalon argues that under the discovery rule its *quantum meruit* and unjust enrichment claims accrued in December 2010 and thus are timely. While Toll Processing argues that Kastalon has not cited any cases applying the discovery rule to unjust enrichment claims, in *Lewandowski v. Jelenski*, 401 Ill. App. 3d 893, 897 (1st Dist. 2010), the Illinois Appellate Court cited *Frederickson v. Blumenthal*, 271 Ill. App. 3d 738, 742 (1st Dist. 1995), for the proposition that the discovery rule applies to unjust enrichment claims. However, this Court agrees with Toll Processing that Kastalon has not made any allegations in its counterclaim to support application of the discovery rule. Toll Processing's motion to dismiss the counterclaim for unjust enrichment and *quantum meruit* arising from transportation of the rolls is granted. Thus, Kastalon's counterclaim for damages arising from transportation of the rolls is dismissed without prejudice. Kastalon is granted leave to amend its counterclaim.

Based on the foregoing, Kastalon's motion to dismiss Count III of the First Amended Complaint [51] is denied. Toll Processing's motion to partially dismiss Kastalon's counterclaim [59] is granted. Kastalon is granted leave to amend its counterclaim within 21 days of this Order.

IT IS SO ORDERED.

Date: April 8, 2014  Entered: _____

United States District Judge